UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Albert Lee Hubbell,                                  Civil No. 09-CV-1173 (JMR/SRN)

      Plaintiff,

     v.                                            **REPORT AND RECOMMENDATION**

Better Business Bureau of Minnesota,
a Minnesota Corporation, and Anne
Gallagher, a Minnesota resident.

      Defendants.

---

    David Larson, Esq., Martin & Squires, P.A., 2050 Piper Jaffray Plaza, 444 Cedar Street, St. Paul, Minnesota 55101, for Plaintiff.

    Thomas E. Marshall and Gina K. Janeiro, Esqs., Jackson Lewis, LLP, 225 South Sixth Street, Suite 3850, Minneapolis, Minnesota 55402, for Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

This case is before the Court on Defendant's Rule 12(b)(6) Motion to Dismiss Defendant Anne Gallagher [Doc. No. 15]. This matter was referred to the undersigned by an Order of Reference entered by the District Court on September 4, 2009, pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1(b). For the reasons set forth below, the Court recommends that Defendant's Motion to Dismiss be granted.

I.    **BACKGROUND**

Plaintiff initiated this suit on May 19, 2009, asserting claims against Defendant Better Business Bureau ("the Bureau") for disability discrimination in violation of the Americans with Disabilities Act (ADA) and Minnesota Human Rights Act (MHRA), and against Defendant

1

Anne Gallagher ("Gallagher") for aiding and abetting discrimination under the MHRA [Doc. No. 1].

Plaintiff, the former CEO of the Bureau, was employed by the Bureau from March 2006 until his termination on December 5, 2008. Plaintiff had additional years of experience working for Better Business Bureaus in other cities and states. During his employment with the Bureau, in or around April 2008, Plaintiff was diagnosed with depression and bipolar disorder. Plaintiff informed Defendant Gallagher, Plaintiff's supervisor and Chair of the Board, of his condition in June 2008. Because his condition was controlled with medication, Plaintiff contends he was not disabled under the ADA and MHRA. Rather, Plaintiff asserts that the Bureau "through its employees and Board of Directors and Anne Gallagher regarded Plaintiff as having a mental disability and having a record of having a disability." (Complaint at ¶ 14).

Plaintiff asserts in the Complaint that he was an exemplary employee who received positive performance evaluations, pay increases, and bonuses. (Complaint ¶ 15 and 17). In September 2008, the Board of Directors received an anonymous complaint about Plaintiff. To investigate the complaint, Defendant Gallagher and her assistant interviewed staff members. Ultimately, Gallagher concluded the complaint lacked merit and the Board gave Plaintiff a unanimous vote of confidence. (Complaint at ¶ 18).

A few months later, after expressing dissatisfaction with her performance, Plaintiff placed one of his employees, Barb Grieman, on a performance improvement plan. On or about November 24, 2008, Ms. Grieman met with Defendant Gallagher to complain about Plaintiff. Plaintiff asserts, "[t]he discussion focused on the mental health disability that they regarded him as having." After meeting with Ms. Grieman, Defendant Gallagher scheduled an Executive Committee conference call for the next day. She also scheduled a meeting with Plaintiff and the

Bureau's attorney, at the attorney's office, for the next week. In an email to Ms. Grieman about the upcoming meeting with Plaintiff, Defendant Gallagher asked "[d]o you fear he may hurt himself or others?" In response, Ms. Grieman stated, "the possibility of him hurting someone was there."

At the meeting with the Bureau's attorney on December 1, 2008, Plaintiff was asked to respond to a list of anonymous claims, including several claims which had been investigated in September. At the next meeting with the Bureau's attorney, on December 5, 2008, Plaintiff was told he was being terminated because it was "in the best interest of the [Bureau]." Plaintiff later received a letter stating the reasons for his termination. According to Plaintiff, "[t]hose reasons, in large part, were the same as those in the anonymous complaint in August, reasons that had been investigated and rejected by the Board as being false." (Complaint at ¶ 25).

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure only require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must provide "fair notice of the plaintiff's claim and grounds for relief." Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008). On a motion to dismiss, a court must assume that all the facts alleged in the complaint are true and generally construe the complaint in the light most favorable to the plaintiff. Id.; Crooks v. Lynch, 557 F.3d 846, 848 (8th Cir. 2009); Benton v. Merrill Lynch Co., Inc., 524 F.3d 866, 870 (8th Cir. 2008). A court may, however, reject any unwarranted inferences and conclusory or catch-all assertions of law. Elam v. Neidorff, 544 F.3d 921, 926 (8th Cir. 2008).

A motion to dismiss should be granted only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 12(b)(6);

Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008). To survive a motion to dismiss, the complaint must allege facts which raise more than a speculative right to relief. Benton, 524 F.3d at 870 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (U.S. 2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id.

### III. DISCUSSION

Plaintiff has asserted a claim against individual defendant Gallagher for aiding and abetting discrimination in violation of the Minnesota Human Rights Act (MHRA), Minn. Stat. 363A.14. The statute provides in relevant part, "[i]t is an unfair discriminatory practice for any person: (1) [i]ntentionally to aid, abet, incite, compel, or coerce a person to engage in any of the practices forbidden by this chapter." Id. Under the MHRA, an underlying discrimination claim is a prerequisite to a claim of aiding and abetting discrimination. Tong v. American Public Media Group, No. A05-432, 2005 WL 3527273, *6 (Minn. Ct. App. Dec. 27, 2005); Lussier v. Wal-Mart Stores, Inc., No. 06-CV-1395, 2007 WL 2461932, *6 (D. Minn. Aug. 28, 2007).

Defendants assert that Gallagher cannot be liable under an aiding and abetting theory because Gallagher was not acting outside her employment. It does not appear that any court has directly addressed the issue of whether a supervisory employee and board member, acting in the course and scope of their employment, can be liable for aiding and abetting discrimination in violation of the MHRA. However, two policy rationales in cases addressing similar issues lead

4

this Court to conclude that such an individual supervisor should not be liable for "aiding and abetting."

### A. Supervisors Cannot Be Held Individually Liable for Discrimination.

Under the MHRA, individual supervisors cannot be liable for discrimination. McKenzie v. Rider Bennett, LLP, No. 05-CV-1265, 2006 WL 839498, *3 (D. Minn. March 28, 2006); Iyorbo v. Quest Int'l Food Flavors & Food Ingredients Co., ICI, No. 03-CV-5276, 2003 WL 22999547, *3 (D. Minn. Dec. 19, 2003) (citing Waag v. Thomas Pontiac, Buick, GMC, Inc., 930 F. Supp. 393, 407-08 (D. Minn. 1996)). In Iyorbo, Judge Magnuson held that a plaintiff could not "re-cast" a claim for individual liability against a supervisor by calling it a claim for aiding and abetting. Iyorbo, 2003 WL 22999547 at *3. The court stated "Iyorbo argues that Mathey is liable for aiding and abetting Quest's illegal discrimination. This allegation is a mere re-cast of personal liability however." Id. Thus, in situations in which the individual defendant was acting in a supervisory or decision-making capacity, the court suggested the supervisor could not be individually liable for aiding and abetting where the supervisor could not be held individually liable for the discrimination itself.

### B. Individuals Cannot Aid and Abet Themselves.

In order to be liable under an aiding and abetting theory, the individual must have acted "in concert" with someone else and an employee cannot aid and abet him or herself. Hinckley v. Indep. Sch. Dist. No. 2167, No. A05-2530, 2006 WL 2256979, *3 (Minn. Ct. App. Oct. 17, 2006); Wallin v. Minn. Dept. of Corr., 598 N.W.2d 393, 405 (Minn. Ct. App. 1999); Vajdl v. Mesabi Academy of KidsPeace, Inc., No. 04-CV-4357, 2006 WL 1283894, *12 (D. Minn. May 10, 2006) (granting summary judgment to individual co-worker because Plaintiff failed to establish co-worker intentionally aided another employee). In Iyorbo, Judge Magnuson also

5

acknowledged that the supervisor should not be held liable because he was not acting in concert with other employees, "[t]he allegations of the Complaint show that Mathey was the actor in nearly every incident of alleged discrimination about which Iyorbo complains. Iyorbo cannot hold Mathey liable for aiding and abetting himself." Iyorbo, 2003 WL 22999547 at *3. The court distinguished, however, allegations claiming the supervisor aided discriminatory actions by co-workers other than Mathey. Id. In those situations, where the supervisor was aiding other employees' discrimination, the supervisor could be held liable for aiding and abetting. Id.

In State by McClure v. Sports & Health Club, Inc., 370 N.W.2d 844, 854 (Minn. 1985), the Minnesota Supreme Court held that the sole owners of a corporation were not liable for aiding and abetting the corporation's discriminatory practices because the owners were acting as the corporation when the discriminatory practices were committed. Id. After the court concluded that it was proper to pierce the corporate veil, the court held that the individual owners of the corporation could not be separately liable for aiding and abetting discrimination because they were not legally distinct from the employer. Id.; see also 17 MN Prac. § 9.12, Principles of Anti-Discrimination Law; The Minnesota Human Rights Act.

### C.     Gallagher's Liability in this Case.

Based on these cases, this Court believes the proper rule is that an individual supervisor and board member of the employer cannot be liable for aiding and abetting unless the individual is acting in an individual capacity, outside the scope of his or her employment, or the individual is alleged to have aided other employees' discrimination. Without such a rule, all supervisors could be held individually liable for discrimination, which is contrary to the rule set out in McKenzie and Waag.

Turning to the facts of this case, it is recommended that claims against Gallagher be dismissed because there are no allegations in the Complaint suggesting she acted outside the scope of her employment as a board member or that she acted in an individual capacity. The Board made the decision to terminate Plaintiff and because Gallagher was acting in her capacity as Chair of the Board, she cannot be held liable for aiding and abetting herself-by making her decision with the Board. Nor are there any allegations in the Complaint that Gallagher aided the discriminatory acts of other employees.

Plaintiff asserts that the Complaint alleges that Gallagher acted outside the scope of her position as Chair and Plaintiff's supervisor, merely because the counts of the Complaint do not use the word "supervisor." However, under the pleading standards set forth in <u>Twombly</u> and <u>Iqbal,</u> there is nothing in the Complaint to plausibly assert that Gallagher was acting in any capacity other than in her position as supervisor and the Chair of the Board. The Complaint refers to Gallagher in her positions as a supervisor and Chair with respect to the alleged acts of discrimination. For instance, the Complaint states, Gallagher, "[Plaintiff's] supervisor and the Chair of the Board of Directors, believed that he presented a direct threat to the health and safety of others." (Complaint at ¶ 27). There are no allegations in the Complaint asserting that Gallagher acted individually or outside the scope of her position as Chair of the Board. Because there is no plausible claim in the Complaint that Defendant Gallagher should be individually liable, the claim against her for aiding and abetting discrimination should be dismissed.

## IV. <u>RECOMMENDATION</u>

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Rule 12(b)(6) Motion to Dismiss Defendant Anne Gallagher [Doc. No. 15] be **GRANTED**.

Dated:  November 30, 2009                              s/ Susan Richard Nelson_____
                                                       SUSAN RICHARD NELSON
                                                       United States Magistrate Judge



Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 15, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.